# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Jianjia Chen, | Case No. 1:26-cv-1894 |
| Plaintiff, | |
| v. | Complaint Filed: 2/19/2026 |
| | Judge: Jorge L. Alonso |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", | |
| Defendants. | |

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR ENTRY OF A PRELIMINARY INJUNCTION

## I.      INTRODUCTION

Defendants' fifteen-page Opposition spends most of its space on procedural objections and offers little of substance on the merits. Stripped of rhetoric, the Opposition raises three real questions: whether the Asserted Patent is likely valid, whether the accused products are likely to be found infringing, and whether Plaintiff has shown irreparable harm. The answer to all three is yes.

Defendants' procedural objections do not defeat a preliminary injunction. They have appeared, retained capable counsel, filed a substantive opposition, and will be heard at any hearing the Court schedules. That is due process. Their service and personal jurisdiction objections are likewise meritless: the alternative-service order was entered after a showing the Court found sufficient, and Defendants chose to operate Amazon storefronts that ship to Illinois consumers and accept payment in U.S. dollars. Joinder objections, even if any merit existed, are case-management issues that do not affect the four Winter factors.

1

On the merits, Defendants' invalidity and non-infringement arguments collapse on inspection. The four prior-art references they offer are visually distinct from the Asserted Patent, and not one is the kind of "primary reference" required to support invalidity in a design patent case. Their functionality argument misstates the law, which design patents protect the ornamental features of useful articles, and the existence of countless alternative slipper designs proves the claimed design is ornamental, not functional. And on infringement, Defendants cherry-pick a single feature instead of comparing the overall visual impression, as Egyptian Goddess requires. Side-by-side comparison shows substantial similarity.

Finally, Defendants' irreparable harm argument relies on smartphone cases that have no application to a design patent covering the entire product itself. Where, as here, the design is the product, the very thing consumers see and choose, the causal nexus is inherent. Combined with Defendants' anonymity, foreign location, and ability to dissipate assets, the irreparable-harm factor is plainly satisfied. The Motion should be granted.

## II.     ARGUMENT

### A. Defendants' Procedural Objections Do Not Defeat the Preliminary Injunction.

Defendants devote the first eight pages of their Opposition to procedural arguments, due process, service, personal jurisdiction, and joinder. None of these arguments warrants denial of the Motion.

***Due Process.*** Defendants argue they were deprived of due process because the initial filings were sealed. Schedule A cases routinely proceed under seal at the outset to prevent foreign infringers from dissipating assets, deleting evidence, and shifting to new aliases the moment they learn of the lawsuit. That is precisely the conduct paragraphs 4, 20, and 22 of the Complaint describe and that this Court found sufficient when granting the TRO. Defendants now have full

notice. They have appeared, retained counsel, and filed a fifteen-page Opposition. The pending preliminary-injunction proceeding is itself the adversarial process they say they were denied. Granting the Motion after that process is not a due-process violation; it is the resolution of one.

*ABC Corp. I*, on which Defendants rely, is materially different. There, the Federal Circuit vacated a preliminary injunction entered *without* notice or hearing. Here, Defendants have notice and an opportunity to be fully heard. Their cited authority does not support denying a motion when the defendant has appeared and briefed the issues.

***Service.*** Defendants' service arguments fail for two independent reasons. First, the Defendants have appeared through counsel and filed a substantive opposition addressing the merits. A defendant who appears and contests a motion on the merits cannot at the same time complain that the Court lacks the power to rule. Second, this Court entered the alternative-service order under Rule 4(f)(3) after considering Plaintiff's showing, a showing this Court has accepted in many comparable Schedule A cases. *See, e.g., Gianni Versace, S.p.A. v. Yong Peng et al.*, No. 18-cv-5385 (N.D. Ill. Feb. 27, 2019); *Levi Strauss & Co. v. Zhejiang Weidu Garment Co.et al.*, No. 16-cv-7824 (N.D. Ill. Nov. 17, 2016).

***Personal Jurisdiction.*** Before filing suit, Plaintiff's counsel completed test purchases from each Defendant's storefront on February 9, 2026, and each accused product was shipped to counsel in Chicago, Illinois. Wu Decl. ¶¶ 10-14 & Ex. 2 (screenshots and order confirmations). Each Defendant therefore accepted an order, processed payment, and shipped an infringing product into this District. That is purposeful availment. *Advanced Tactical Ordnance* did not hold otherwise; it held only that a single sale, without more, may be insufficient. Here there is more: completed sales to Illinois, shipment to Illinois, and a fully interactive storefront soliciting Illinois orders. Courts

in this District routinely exercise specific jurisdiction over Schedule A defendants on indistinguishable facts.

**Joinder.** Defendants' § 299 argument addresses case management, not the four *Winter* factors. Even if some severance were appropriate later in the case, that would not preclude preliminary relief now. The record also undercuts Defendants' claim of independence. According to Amazon's Detailed Seller Information, the two Moving Defendants, Hong Kong Hongdan Trading Co., Limited and Hong Kong Hengxin E-Commerce Co., Limited, list business addresses in the same unit on the same floor of the same building in Sha Tin, Hong Kong (Unit A19, 19/F, Wah Lok Industrial Centre, 37-41 Shan Mei Street). Their Amazon seller pages also use word-for-word identical "About Seller" text, share the same marketing copy on the listings (including the identical phrases "WARM & SOFT Pamper your feet without shedding" and "ROLLABLE Light for travel"), and offer overlapping color variants of the same accused product. The visually identical listings, offered by sellers using anonymous aliases on the same platform with shared photographs and listing language, support a reasonable inference of common sourcing and a series of related transactions. Defendants' unsworn assertion of independence, with no documentary support, does not require severance at the preliminary-injunction stage.

**B. Plaintiff Is Likely to Succeed on the Merits.**

1. _The Asserted Patent Is Presumptively Valid, and Defendants Have Not Raised a Substantial Question of Invalidity._

The Asserted Patent issued from the U.S. Patent and Trademark Office on October 14, 2025, after examination on the very prior art Defendants now cite. By statute, it is presumed valid, and Defendants must overcome that presumption by clear and convincing evidence. 35 U.S.C. § 282; *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011). At the preliminary-injunction stage,

Defendants must show that they have raised a *substantial question* of invalidity that lacks substantial merit. A laundry list of ordinary slippers does not meet that standard.

In design patent cases, anticipation and obviousness require a single primary reference whose overall visual appearance is *substantially the same* as the claimed design. *High Point Design LLC v. Buyer's Direct, Inc.*, 730 F.3d 1301, 1311–12 (Fed. Cir. 2013); *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1329 (Fed. Cir. 2012). Element-by-element borrowing across multiple dissimilar references will not do. Each of the four references Defendants cite fails this standard:

| Plaintiff's Copyrighted Image and Products | Defendants' Alleged Prior Art Evidence |
|---|---|
| | D'569 Patent |
| | Northface THERMOBALL Traction Mules V |



Dearfoams River Energy Return

Bombas Women's Sunday Slipper

The D'569 Patent (Abramowitz) depicts a moccasin with a dotted toe panel and a markedly different silhouette. It does not show the swirl-pattern upper, the contrasting collar trim, the distinctive heel-to-vamp transition, or the overall low-profile oval shape that defines the Asserted Patent.

The North Face ThermoBall Traction Mule is a puffer-style slipper with prominent diamond-quilted panels, a contrasting black rubber outsole that wraps up the sides, and a visible logo and pull-tab. Its overall impression is that of a quilted puffer bootie, not the Asserted Patent's smooth, oval, swirl-patterned slip-on.

6

The Dearfoams River Energy Return is built around a large, geometric diamond-quilted upper, a rear pull-tab, and a structured tan outsole. None of those defining features appears in the Asserted Patent.

The *Bombas Sunday Slipper* is an open-back mule with a fleece interior, a categorically different silhouette. It has no closed heel at all. It cannot anticipate a closed-heel slip-on.

Defendants do not even attempt the proper anticipation analysis, identifying a single reference that discloses the same overall visual impression as the claimed design. They instead string together features from four unrelated products and ask the Court to imagine a hybrid. That is hindsight obviousness, not a substantial question of invalidity. And the fact that several of these references were before the Examiner during prosecution makes the presumption even harder to overcome.

2. *The Asserted Patent Is Not Primarily Functional.*

Design patents protect the ornamental features of useful articles. The mere fact that an article is functional does not invalidate a design patent on that article. *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993). A design is invalid as functional only when the design as a whole is *dictated* by function, meaning no other design could serve the same purpose. The existence of multiple alternative designs that perform the same function is strong evidence the claimed design is ornamental. *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1329–30 (Fed. Cir. 2015).

The slipper market has thousands of designs that all provide insulation, traction, ease of entry, and durability. Defendants' own brief shows four prior-art slippers, each of which looks markedly different from the others. That alone proves the point. The Asserted Patent's combination of an oval silhouette, a uniform swirl-pattern upper, a contrasting collar trim, a distinctive heel-to-

vamp transition, and the proportions shown in Figures 1–7 reflects ornamental choices, not functional necessity. Defendants' attempt to factor every visible feature out of the claim as "functional" would, if accepted, write design patents out of footwear law altogether. That is not the rule.

3. _The Accused Products Infringe Under the Ordinary-Observer Test._

Infringement of a design patent is judged by the eye of the ordinary observer, comparing the patented design and the accused product as a whole. _Egyptian Goddess, Inc. v. Swisa, Inc._, 543 F.3d 665, 678 (Fed. Cir. 2008) (en banc). The test focuses on overall similarity, not minute differences in individual elements. _Crocs, Inc. v. Int'l Trade Comm'n_, 598 F.3d 1294, 1303 (Fed. Cir. 2010) ("minor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement").

| Plaintiff's Copyrighted Image and Products | Defendants' Infringing Products |
| --- | --- |
| | <br>Defendant hong dan's Product |



Defendant heng xin's Product

The side-by-side comparison above speaks for itself. Defendants' products are not merely "similar" to the patented design. They are near-identical copies, with no meaningful effort to differentiate. Each accused product reproduces the same oval silhouette, the same wrap-around vamp, the same contrasting heel-to-vamp transition, the same low-profile slip-on shape, and the same proportions shown in the patent figures. The only differences are surface material and color, neither of which is part of the claimed design. An ordinary observer would not merely be deceived into thinking the accused products are the patented design. They are visually indistinguishable from it.

Against that backdrop, Defendants' focus on a single feature, the construction of the rear heel, is exactly the analysis *Egyptian Goddess* forbids. The test is overall visual impression, not selective dissection of individual elements. And the rear heel of each accused product itself tracks the patented design's heel-to-vamp transition, including the contrasting trim that wraps under the front upper.

### C.  Plaintiff Has Established Irreparable Harm.

Defendants argue Plaintiff has not shown irreparable harm because the asserted harm is "purely monetary" and lacks a causal nexus. Both arguments fail.

First, the causal-nexus cases Defendants cite, all from the *Apple v. Samsung* smartphone litigation, involve utility patents on small features of a complex multi-feature product. The question in those cases was whether consumers bought the iPhone *because* of, say, a particular software feature among thousands. That problem does not arise here. The Asserted Patent covers the ornamental design of the slipper itself, the very thing the consumer sees, evaluates, and chooses. Where the design is the product, the causal nexus is inherent. The slipper *is* the patented feature.

Second, the harm here is not "purely monetary." Defendants are anonymous foreign sellers operating behind aliases. If they liquidate their accounts, transfer funds, or simply rotate to new aliases, as the Complaint alleges they have done before, any eventual money judgment will be uncollectible. Loss of the ability to recover damages is itself irreparable harm. So is the loss of market share to anonymous infringers selling identical-looking products at lower prices, the erosion of price points that consumers come to associate with the design, and the reputational harm of having Plaintiff's product compete against unauthorized copies of unknown quality. None of these injuries can be undone by a damages award years from now against parties who may not be findable.

The cases cited by Defendants are likewise distinguishable. *Spectrum Brands* turned on the plaintiff's failure to submit any sales or market evidence at all, along with a finding that the accused product had material visual differences. Plaintiff's showing here, supported by the patent itself, the Complaint allegations, and the visual identity of the accused products, is materially stronger. To the extent the Court would benefit from additional declarations, Plaintiff is prepared to supplement the record.

**D. The Bond Is Adequate, and Plaintiff Will Supplement if the Court Directs.**

The amount of a Rule 65(c) bond is committed to the Court's sound discretion. The bond Plaintiff has posted is consistent with amounts routinely accepted by courts in this District in Schedule A cases. Defendants demand $3,000 per defendant but offer no evidence of any specific damage they would suffer from a properly limited asset restraint. The temporary asset restraint reaches only funds tied to allegedly infringing sales, not Defendants' entire operations. If the Court determines that a higher bond is appropriate based on a particularized showing by any individual Defendant, Plaintiff is willing to supplement the bond to whatever amount the Court considers proper.

**E. The Balance of Equities and the Public Interest Favor Preliminary Relief.**

Defendants' hardship argument assumes the very fact in dispute, namely, that they are legitimate small businesses being unfairly restrained. The record before the Court tells a different story. Anonymous foreign sellers operate behind aliases, offering products that are visually nearly identical to a patented design, on platforms designed to make identification and enforcement difficult. The freeze applies only to the proceeds of allegedly infringing sales. Lawful business operations are not affected, and any Defendant who can document non-infringing sales can seek a tailored modification. By contrast, Plaintiff's harm, including loss of market share, dilution of design exclusivity, and the potential evaporation of any future damages remedy, is real and ongoing every day Defendants continue to sell.

The public interest favors the enforcement of valid intellectual property rights and the protection of consumers from undisclosed copies. Defendants invoke a generic interest in "competition," but there is no public interest in competition by infringement. The public interest

11

is served by ensuring that design patents granted by the USPTO are meaningful protections, not paper rights that anonymous foreign sellers can ignore.

## III.     CONCLUSION

Plaintiff respectfully requests that the Court grant the Motion and enter the proposed Preliminary Injunction. Plaintiff stands ready to supplement the bond, narrow the asset restraint, or address any specific hardship that any individual Defendant can substantiate.

Date: May 6, 2026.                                     Respectfully submitted,

/s/ Mandy Yueqi Wu
Mandy Yueqi Wu
Valley & Summit Law
One Park Plaza, Suite 600
Irvine, California 92614
Tel: (949) 342-8013
mandy.wu@valleysummitlaw.com

Counsel for Plaintiff Jianjia Chen

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2026, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record. Pursuant to the Court's order authorizing alternative service, a copy was also transmitted to Defendants at the email addresses on file.

/s/ Mandy Yueqi Wu
Mandy Yueqi Wu